



NICOLETTI HORNIG CAMPISE & SWEENEY
Attorneys for Plaintiff
FEDERAL INSURANCE COMPANY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830
Fax: (212) 220-3780

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FEDERAL INSURANCE COMPANY,

        Plaintiff,

    - against -

PGG REALTY, LLC, BEN ASHKENAZY,
and KEYBANK NATIONAL ASSOCIATION,

        Defendant.

-------------------------------------------------------------X

06 CV 2455 (JSR)(JCF)

**SECOND AMENDED
DECLARATORY
JUDGMENT COMPLAINT**

    Plaintiff Federal Insurance Company, by its attorneys, NICOLETTI HORNIG

CAMPISE & SWEENEY, as and for an Amended Complaint against the Defendants, PGG

Realty, LLC, Ben Ashkenazy and KeyBank National Association, respectfully alleges upon

information and belief as follows:

### JURISDICTION

    1.    This action is filed under and pursuant to the Federal Declaratory Judgment Act,

28 U.S.C. §2201.

    2.    The following issues constitute questions of insurance coverage under an

Admiralty or Maritime contract of insurance and thereby come within the Admiralty and

Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et

seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

3.     An actual controversy of a justiciable nature exists between plaintiff and defendants involving the rights and obligations under a marine contract of insurance and depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

## PARTIES

4.     At all times relevant, plaintiff Federal Insurance Company ("Federal") was and is a corporation duly organized and existing under and by virtue of the laws of the State of Indiana with a place of business for marine insurance located at 55 Water Street, New York, New York 10005.

5.     At all times relevant, plaintiff Federal was in the business of issuing insurance contracts or policies, including but not limited to marine "yacht" insurance contracts or policies.

6.     At all time relevant, defendant PGG Realty, LLC ("PGG") was and is a "Limited Liability Company" duly organized and existing under and by virtue of the laws of the State of Delaware, with a business address at c/o Ben Ashkenazy, 433 Fifth Avenue, Suite 200, New York, New York.

7.     At all times relevant, defendant Ben Ashkenazy was and is a natural person, residing in New York at 433 Fifth Avenue, New York, New York.

8.     At all times relevant, defendant KeyBank National Association ("KeyBank") was and is a financial institution and/or a membership organization whose members consisted of various and several lending institutions, which jointly and severally trade under the name

2

KeyBank with an office and place of business at 4910 Tiedeman Road, Brooklyn, Ohio. KeyBank is in the business of lending monies to individual and/or corporate borrowers, which loans are collateralized by real and/or personal property assets, including yachts.

9.     At all times relevant, KeyBank and/or one or more of its members was and is licensed to do business in the State of New York.

10.    At all times relevant, William E. Kelly Agency, Inc. ("Kelly Agency") was and is duly organized and existing under and by virtue of the laws of the State of New York, with a place of business at 447 East Boston Post Road, Mamaroneck, New York. Kelly Agency is not a party to this litigation.

11.    At all times relevant, Kelly Agency was and is in the business of insurance brokerage and assisted clients, such as defendants PGG, Ashkenazy and KeyBank to obtain various insurance coverages, including marine insurance for a particular yacht which was named M/Y PRINCESS GIGI.

12.    At all times relevant, Kelly Agency was an insurance broker in New York and agent of defendants PGG, Ashkenazy and/or KeyBank.

## The Policy

13.    On or about December 13, 2005, Kelly Agency on behalf of defendants PGG, Ashkenazy and/or KeyBank solicited from, and negotiated with, plaintiff Federal in New York for a contract of marine "yacht" insurance to insure the hull of the M/Y PRINCESS GIGI and for certain liabilities arising out of said defendants' ownership, operation and/or financial interest in the subject yacht.

14.    On or about December 13, 2005, Kelly Agency on behalf of defendants PGG, Ashkenazy and/or KeyBank negotiated with certain underwriters in Federal's New York office

3

for a marine "yacht" insurance contract to be issued to defendants PGG and Ashkenazy with defendant KeyBank named as "Loss Payee".

     15.     On or about December 13, 2005, plaintiff Federal, through its underwriters in New York, bound a particular marine "yacht" policy in New York for the account of defendants PCC, Ashkenazy and KeyBank.

     16.     Plaintiff Federal's underwriters issued the subject marine "yacht" contract to defendants PGG, Ashkenazy and KeyBank in New York and delivered that marine contract of insurance to said defendants in New York.  A copy of the marine "yacht" contract (which is entitled: "Masterpiece Policy" and issued under policy no. 0037007407) is annexed hereto and made a part hereof as Exhibit "A" (sometimes hereinafter referred to as the "Federal Policy").

     17.     The Federal Policy issued by plaintiff Federal to defendants PGG, Ashkenazy and KeyBank is governed and controlled by Federal Maritime law and in the absence thereof, New York state law.

     18.     **The Federal Policy provides in pertinent part:**

> **You** means an entity or a person named in the Coverage Summary, and a spouse who lives with that person.
>
> **Navigational limits mean:**
> - the Atlantic and Gulf coastal/tidal waters from Eastport, Maine, to Brownsville, Texas;
> - the coastal/tidal waters of the Bahamas;
> - the Gulf coastal/tidal waters of Mexico, not south of Belize;
> - the Pacific coastal/tidal waters from Malcolm Island, British Columbia, to Cabo San Lucas, mexico;
> - the Pacific coastal/tidal waters from Malcolm Island, British Columbia to Cape Spencer, Alaska between May 1st and October 1st, both days inclusive, and
> - the inland water of the continental United States and Canada, including the Great Lakes.

* * *

4

## PHYSICAL DAMAGE COVERAGE

This part of your Yacht Preference Policy provides you with coverage against all risk of physical loss to your yacht unless stated otherwise or an exclusion applies. This coverage applies to a loss occurring on land or <u>within the navigational limits</u> covered by this policy, except where prohibited by law. Exclusions to this coverage are described in **Exclusions. (emphasis added).**

\* \* \*

**Examination under oath.** We have the right to examine separately under oath, as often as we may reasonably require, you, family members, captain or full time paid crew members, other members of your household, anyone using your yacht with your permission, and anyone related to you with knowledge of the loss, and have them subscribe the same. We may also ask you to give us a signed description of the circumstances surrounding a loss and your interest in, and to produce all records and documents we request and permit us to make copies.

\* \* \*

### Loss payee

If a loss payee is named in this policy, any loss payable will be paid to the loss payee and you, as interests appear. If more than one loss payee is named, the order of payment will be the same as the order of precedence of the loss payees. We cover the interests of the loss payee, unless the loss results from fraudulent acts or omissions on your part.

If we deny your claim, that denial will not apply to a valid claim of the loss payee, provided that the loss payee:
- notifies us of any change in ownership or substantial change in risk of which the loss payee is aware;
- pays any premium due under this policy on demand if you have neglected to pay the premium; and
- submits a signed sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

Policy conditions relating to a condition and value survey, legal action against us, and payment of property claims apply to the loss payee. If the policy is cancelled or not renewed by us, the loss payee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the loss payee for any loss and deny payment to you, then:

- our rights are subrogated to all rights of the loss payee granted under the loan on the property; or
- at our option, we may pay to the loss payee the whole principal on the loan plus any accrued interest. In this event, we will receive a full assignment and transfer from the loss payee and all securities held as collateral to the debt.

Subrogation will not impair the right of the loss payee to recover the full amount of the loss payee's claim.

\* \* \*

## SPECIAL COVERAGES

### Navigational limits extension
If Navigational limits extensions is shown in the Coverage Summary, the navigational limits defined in the Definitions are extended to include the coastal/tidal waters of:

- Newfoundland Island;
- Bermuda;
- Alaska;
- Mexico; and
- the Caribbean Sea not south of Venezuela.

Navigational limits does not mean the coastal/tidal waters of Cuba, Haiti, Colombia, Guatemala, Nicaragua, El Salvador, Panama, or Honduras.

\* \* \*

## EXCLUSIONS

These exclusions apply to your Yacht Preference Policy, including Special Coverages, unless stated otherwise.

The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.

**Intentional acts.** We do not covered any loss caused intentionally by:
- a covered person;

\* \* \*

6

**Gradual or sudden loss.** We do not provide coverage for the presence of wear and tear, marine life, gradual deterioration, electrolysis, <u>lack of maintenance</u>, fiberglass osmosis, or blistering, however caused, or any loss caused by wear and tear, marine life, gradual deterioration, electrolysis, <u>lack of maintenance</u>, fiberglass osmosis, or blistering. **(emphasis added).**

\* \* \*

**Neglect.** We do not cover any loss caused by your failure to use all reasonable means to protect property before, at, or after the time of a loss.

\* \* \*

## GENERAL CONDITIONS

### Concealment or fraud
This policy is void if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss.

\* \* \*

BRANCH OFFICE: WESTCHESTER

Name and address of Insured

PGG REALTY LLC
C/O BEN ASHKENAZY
433 5TH AVENUE, SUITE 200
NEW YORK, NY 10016

**Effective:** 12/13/2005
**Policy no.** 0037007407
**Issued by** Federal Insurance Company
a stock insurance company
incorporated in Indiana
**Policy Period** 12/13/2005 to 12/13/2006

**If you have any questions, please contact**
WILLIAM E KELLY AGENCY INC.
447 BOSTON POST RD
MAMRONECK, NY 10543
(914) 698-0676
Agent No: 2-63077

\* \* \*

## PHYSCIAL DAMAGE COVERAGE
This policy provides you with coverage against physical loss if your yacht is damaged or destroyed. The kinds of losses that are covered and any special limits that apply, are explained in detail in the policy.

7

| Coverage | Deductible |
|----------|------------|
| $7,023,000 | $35,115 |

\* \* \*

**SPECIAL COVERAGES**
You have the navigational limits extension as explained in your policy.

**LOSS PAYEE**
KEYBANK NATIONAL ASSOCIATION
LOAN SERVICES, MAILCODE OH-01-51-0511
4910 TIEDEMAN ROAD
BROOKLYN, OHIO 44144

19.     Pursuant to the terms of the Federal Policy, the hull of the M/Y PRINCESS

GIGI, was insured for value in the sum of $7,023,000.00 with deductibles of $35,115.00.

20.     On or about December 13, 2005, Kelly Agency on behalf of defendant KeyBank

negotiated with certain underwriters in Federal's New York office for the Warranty

Endorsement.

21.     On or about December 13, 2005, plaintiff Federal through its underwriters in

New York, bound and issued, a particular "Breach of Warranty" endorsement in favor of

defendant KeyBank, as Loss Payee under the Federal Policy.

22.     Plaintiff Federal's underwriters bound and issued the subject Breach of

Warranty Endorsement in New York and delivered same to said defendants in New York.

23.     On or about December 13, 2005, the Masterpiece policy was supplemented by

"Breach of Warranty" endorsement ("Warranty Endorsement") issued in favor of the "Loss

Payee", KeyBank and states in pertinent part as follows:

8

## Breach of Warranty Endorsement

Under Policy terms, Physical Damage Conditions, the following is added for your 2001 124Ft Trident:

Breach of warranty
Regarding the interest of the Loss Payee shown in the Coverage Summary, the insurance will not be invalidated by any act or negligence or breach of warranty by you or the owner of the yacht. However, we will not pay the Loss Payee if your act, negligence or breach of warranty occurred with the consent or knowledge of the Loss Payee.

* * *

For the Loss Payee to recover for breach of warranty, you must bring legal action against us to recover under the policy only after we have denied your claim. We will pay up to the outstanding balance of the mortgage issued by the loss payee for the yacht shown above, but not more than \$5,850,000. Our rights are subrogated to all rights of the insured and the Loss Payee shall do nothing to impair that right.

24. Pursuant to the terms of the Warranty Endorsement, the limit of insurance was under that endorsement in the amount of \$5,850,000.00.

25. The Warranty Endorsement was similarly solicited and negotiated by the Kelly Agency in New York.

26. The "Breach of Warranty" endorsement which was added to the Federal Policy is governed and controlled by federal maritime law in the absence thereof New York State law.

27. Upon information and belief, defendant KeyBank has alleged that it also requested to be listed as an Additional Insured under the Federal Policy.

28. Although the Federal Policy does not list defendant KeyBank as an Additional Insured, if it is determined that KeyBank is, in fact, an Additional Insured under the Federal Policy, then KeyBank agrees to be bound by the subject Policy's terms, conditions, limitations and exceptions that existed with respect to the original insured.

9

## Factual Background

29.     In the fall/early winter of 2005, defendant Ashkenazy, the principal of defendant PGG, entered into initial negotiations to purchase a particular motor yacht which had been built by Trident Shipworks, Inc. ("Trident") in Florida. The "yacht" measured approximately one hundred twenty-four (124) feet in length and was originally ordered to be built by Seaquest International, Inc. ("Seaquest")

30.     On or about November 22, 2005, defendant Ashkenazy retained Patton Marine, Inc. ("Patton Marine") to conduct a purchase survey of the subject yacht, which survey ultimately led to significant price negotiations with Seaquest.

31.     The subject survey was conducted by Patton Marine during the period of November 21, 2005 through November 23, 2005.

32.     Patton Marine issued a written report including recommendations which were delivered to defendants, PGG and Ashkenazy on or about December 7, 2005.

33.     Prior to Federal's issuing the Policy on December 13, 2005 and the capsizing of the M/Y PRINCESS GIGI on February 6, 2006, Patton Marine's report including recommendations were delivered, received and reviewed by defendants Ashkenazy, PGG, and KeyBank.

34.     During the period of December 1, 2005 through December 7, 2005, Patton Marine provided written recommendations to defendants PGG and Ashkenazy, which noted that there were three (3) watertight compartments on the subject yacht, in-way of the forepeak, forward and aft engine rooms, and that all three (3) watertight bulkheads had been compromised by plumbing penetrations and unsealed cut-throughs.

10

35.     On or about December 1, 2005 through December 7, 2005, Patton Marine recommended that defendants PGG and Ashkenazy install proper seals at all penetration points on both sides of the watertight bulkheads in way of the forepeak, forward and aft engine rooms.

36.     The port and starboard garages at the rear of the subject yacht shared a watertight bulkhead with the engine room.

37.     Included among the various and several Patton Marine observations and recommendations, water was noted dripping into the bilge space under the port garage and into the steering compartment from the port swim deck section. Recommendations were made to investigate and repair these leaks.

38.     Although certain repairs were made at the Jones Boatyard in Miami, there is no verification that significant work was done in either the port or starboard garages, including the sealing of the openings in the watertight bulkhead.

39.     For the subject yacht to be seaworthy at the time of policy inception and thereafter, the multiple penetrations through the watertight bulkheads required proper sealing and other watertight areas in the way of the garage doors and swim platform required repair. Patton Marine's recommendations also noted various and several other deficiencies in the subject yacht, some of which may not have been appropriately repaired.

40.     On or about February 5, 2006, the subject yacht, then renamed the M/Y PRINCESS GIGI, broke ground enroute from Fort Lauderdale, Florida to St. Maarten, Netherlands Antilles.

41.     At approximately 8:30 p.m. in the evening on February 5, 2006, a member of the crew of the M/Y PRINCESS GIGI discovered an ingress of water in the bilge area of the vessel's engine room.

11

42.     In the early morning of February 6, 2006, the vessel's crew abandoned the M/Y PRINCESS GIGI.

43.     On the morning of February 6, 2006, M/Y PRINCESS GIGI capsized, but remained afloat.

44.     At all times immediately prior to the discovery of the ingress of water into the engine room of the M/Y PRINCESS GIGI and throughout the time up to her capsizing, the weather and sea conditions were expectable with wave heights of eight (8) feet and with winds of between fifteen (15) to twenty (20) knots.

45.     At all times from commencement of, and during, the voyage in question in which the M/Y PRINCESS GIGI capsized, a representative of the vessel's owner was on board.

46.     By this action, Federal declines the defendants' claims under the Federal Policy arising out of the loss of M/Y PRINCESS GIGI, based on the presently known facts and applicable law for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION

47.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "46" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

48.     The condition of the hull structure, including but not limited to the watertight integrity of the hull of the subject yacht, was and is a material fact to the underwriting of the hull insurance policy.

49.     Had defendants disclosed to Federal the actual hull condition of the M/Y PRINCESS GIGI, as stated in the Patton Marine report, or otherwise existing prior to Federal's issuing the Policy; all of which showed *inter alia* a problem with the watertight integrity of the

12

hull including the aft bulkhead of the engine room, Federal's underwriters would not have issued the subject "yacht" policy and/or would not have issued said Policy on the same terms and/or for the same premium, to the extent paid.

50.     The misrepresentation of and/or failure to disclose the true and correct use of the vessel constitutes a misrepresentation and/or non disclosure of a material fact in the application for marine insurance and a breach of defendants' obligations and duties in obtaining marine insurance, and is a violation of defendants' duty of utmost good faith ("*uberimmae fidei*").

51.     At this time, Federal tenders to defendants PGG and Ashkenazy the return of the full paid premium for the policy year commencing on December 13, 2005 in the total amount of $55,557.00, to the extent paid.

52.     By virtue of the foregoing, the Federal Policy, commencing on December 13, 2005, is null and void ab initio.

## AS AND FOR A SECOND CAUSE OF ACTION

53.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "52" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

54.     The capsizing of the M/Y PRINCESS GIGI on or about February 6, 2006 was not caused by a fortuitous event, and/or did not arise out of an insured event under the Federal Policy, but rather was caused by the defendants intentional failure and/or neglect and/or omission to correct the deficiencies in the "Yacht" as recommended by Patton Marine.

55.     By virtue of the foregoing premises, Federal is not liable under its policy with respect to defendants claim for the total loss of the M/Y PRINCESS GIGI.

13

## AS AND FOR A THIRD CAUSE OF ACTION

56.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "55", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

57.     The law implies into every time hull insurance policy an absolute warranty of seaworthiness.

58.     As a matter of law, defendants warranted the seaworthiness of the M/Y PRINCESS GIGI at the time of the attachment of the risk under the Federal Policy.

59.     At the time of the attachment of the risk under the Federal Policy, the M/Y PRINCESS GIGI was not in a seaworthy condition by reason of, among other things, the lack of watertight integrity of the Yacht's hull, including but not limited to the engine room.

60.     By virtue of the foregoing premises, defendants have breached the absolute implied warranty of seaworthiness for the M/Y PRINCESS GIGI at the time of the inception of the Federal Policy at issue which renders the policy void ab initio, and therefore, plaintiff Federal is not liable for any claims under the subject policy for the total loss of the M/Y PRINCESS GIGI.

61.     Because the Federal Policy is null and void ab initio and no coverage under the policy came into effect, plaintiff Federal hereby tenders to defendants a return of paid premium for the hull insurance under the subject policy in the amount of $55,557.00, to the extent paid.

14

## AS AND FOR A FOURTH CAUSE OF ACTION

62.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "61" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

63.     The law implies into every time hull insurance policy a negative, modified warranty of seaworthiness in addition to the absolute warranty of seaworthiness.

64.     As a matter of law, pursuant to the implied, negative, modified warranty of seaworthiness, defendants warranted that they would not, from lack of due diligence and/or neglect, knowingly allow the M/Y PRINCESS GIGI to break ground in an unseaworthy condition.

65.     At the time the M/Y PRINCESS GIGI departed Fort Lauderdale, Florida for the voyage during which it capsized, defendants and/or their representatives were aware of the yacht's deficiencies as stated in the Patton Marine report or otherwise existing.

66.     At the time the M/Y PRINCESS GIGI departed Fort Lauderdale, Florida for the voyage during which it capsized, defendants and/or their representatives knew that there were several areas of the hull, including the engine room, which were not watertight and knew of other deficiencies which needed correction; some of which were identified in the Patton Marine report and some of which if not all were the proximate cause of the capsizing.

67.     At all times of the voyage during which the M/Y PRINCESS GIGI capsized, the defendants and/or their representatives were aboard the M/Y PRINCESS GIGI.

68.     Despite the knowledge of the defendants and/or their representatives that the M/Y PRINCESS GIGI was unseaworthy at the time the Yacht broke ground from Fort Lauderdale, Florida for the voyage during which she capsized, defendants and/or their

15

representatives, either through intentional acts, neglect and/or omission, allowed the M/Y PRINCESS GIGI to sail in an unseaworthy condition.

69. By virtue of the foregoing premises, plaintiff Federal is not liable for any claims under the Federal Policy at issue for the total loss of the M/Y PRINCESS.

## AS AND FOR A FIFTH CAUSE OF ACTION

70. Repeats and realleges each and every allegation set forth in paragraph "1" through "69" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

71. At the time the M/Y PRINCESS GIGI capsized, it was located approximately 56 miles south of San Salvador in the Atlantic Ocean.

72. At the time the M/Y PRINCESS GIGI capsized, said yacht was outside the navigational limits set forth as a warranty in the Federal Policy.

73. By virtue of the foregoing premises, plaintiff Federal is not liable for any claims under the Federal Policy at issue for the total loss of the M/Y PRINCESS GIGI because of defendants' breach of the navigational warranty set forth in the Federal Policy.

## AS AND FOR A SIXTH CAUSE OF ACTION

74. Repeats and realleges each and every allegation set forth in paragraph "1" through "73" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

75. At no time was KeyBank named as an insured under the Federal Policy issued by Federal to defendants PGG and Ashkenazy.

76. At no time was KeyBank added as an additional insured, but was a "Loss Payee" under the Federal Policy at issue herein.

16

77. The Breach of Warranty Endorsement states as follows:

Breach of warranty
Regarding the interest of the Loss Payee shown in the Coverage
Summary, this insurance will not be invalidated by any act or
negligence or breach of warranty by you or the owner of the yacht.
However, we will not pay the Loss Payee if your act, negligence or
breach of warranty occurred with the consent or knowledge of the
Loss Payee. (emphasis added)

* * *

For the Loss Payee to recover for breach of warranty, you must
bring legal action against us to recover under the policy only after
we have denied your claim. We will pay up to the outstanding
balance of the mortgage issued by the loss payee for the yacht
shown above, but not more than $5,850,000. Our rights are
subrogated to all rights of the insured and the Loss Payee shall do
nothing to impair that right.

The Loss Payee does not have the right to recover the amount of
any applicable deductible.

78. Prior to the casualty, defendant KeyBank knew of the deficient condition of the

M/Y PRINCESS GIGI by virtue of its possession of the Patton Marine report.

79. By virtue of the foregoing, defendant KeyBank has no rights or standing under

the Federal Policy at issue herein and is not entitled to recover any claim under the "Warranty

Endorsement."

## AS AND FOR A SEVENTH CAUSE OF ACTION

80. Repeats and realleges each and every allegation set forth in paragraph "1"

through "79" inclusive of this Complaint with the same force and effect as if more fully set

forth herein.

81. Defendants PGG Realty and Ben Ashkenazy failed to exercise due diligence or

make reasonable efforts for the salvage and wreck removal of the vessel PRINCESS GIGI,

17

even though the capsized vessel constituted a hazard to navigation and potential pollution source which by law had to be removed.

82.     Unbeknownst to plaintiff at the time the salvage costs were incurred, the salvage and wreck removal of the vessel PRINCESS GIGI was not caused by, or did not arise out of, an insured event under the Federal policy, but rather was caused by the defendants' intentional failure and/or neglect and/or omission to correct the deficiencies in the "Yacht" as recommended by various marine surveyors, and therefore, Federal is not liable under the subject Policy for the vessel's salvage and wreck removal expenses.

83.     As a result of the wrongful abandonment of the vessel by PGG Realty and Ben Ashkenazy, and without knowledge of the uninsured cause of loss, Federal authorized Overseas Salvage to render services in efforts to salvage and remove the wreck from navigable waters, and as a result of which plaintiff has sustained damages, claims, costs and expenses of at least $753,172.58.

84.     Plaintiff Federal, having properly declined coverage by virtue of defendants' breach of the duty of utmost good faith (*"uberrimae fidei"*), breach of the absolute implied warranty of seaworthiness; and breach of the negative implied warranty of seaworthiness, seeks full indemnity for all salvage and wreck removal damages, claims, costs and expenses of at least $753,172.58 which Federal has been forced to pay to Overseas Salvage.

85.     By reason of the foregoing premises, defendants PGG Realty and Ben Ashkenazy are liable to Federal for all salvage and wreck removal damages, claims, costs and expenses of at least $753,172.58.

        WHEREFORE, plaintiff Federal Insurance Company prays for judgment against defendants PGG, Ashkenazy and KeyBank as follows:

18

A.  In favor of plaintiff and against defendants on the First Cause of Action for judgment declaring the Federal Policy issued by Federal to defendants for the policy year commencing on December 13, 2005, null and void <u>ab</u> <u>initio</u> and thereby releasing Federal from any obligation to make payment for the losses arising out of the capsizing of the vessel M/Y PRINCESS GIGI;

B.  In favor of plaintiff and against defendants on the Second Cause of Action for judgment declaring that there is no coverage under the Federal Policy for the total loss of the M/Y PRINCESS GIGI by reason that the alleged losses was caused by the intentional acts, neglect and/or omission of defendants;

C.  In favor of plaintiff and against defendants on the Third Cause of Action for judgment declaring that there is no coverage under the Federal Policy for the total loss of the vessel M/Y PRINCESS GIGI by reason that the subject policy is void <u>ab</u> <u>initio</u> due to the breach of the implied absolute warranty of seaworthiness;

D.  In favor of plaintiff and against defendants on the Fourth Cause of Action for judgment declaring that there is no coverage under the Federal Policy for the total loss of the vessel M/Y PRINCESS GIGI by reason that the defendants breached the implied negative, modified warranty of seaworthiness;

E.  In favor of the plaintiff and against defendants on the Fifth Cause of Action for judgment declaring that there is no coverage under the Federal Policy for the total loss of the M/Y PRINCESS GIGI by reason of

defendants breach of the navigational warranty set forth in the Federal Policy,

F.   In favor of plaintiff and against the Loss Payee KeyBank on the Sixth Cause of Action for judgment declaring that KeyBank has no interest under the Federal Policy for the losses arising out of the capsizing of the vessel M/Y PRINCESS GIGI and cannot recover as a Loss Payee under the Warranty Endorsement, because prior to the capsizing, KeyBank had knowledge of the deficiencies and unseaworthiness of the M/Y PRINCESS GIGI;

G.   In favor of plaintiff and against defendants PGG Realty and Ben Ashkenazy on the Seventh Cause of Action for judgment in the amount of at least $753,172.58 for damages, claims, costs and expenses arising out of the salvage and wreck removal of the M/Y PRINCESS GIGI;

H.   In favor of plaintiff for such other and further relief that this Court may deem just and proper;

together with the costs and disbursements of this action.

20

Dated:     New York, New York
           August 28, 2006

                                   NICOLETTI HORNIG CAMPISE & SWEENEY
                                   Attorneys for Plaintiff
                                   FEDERAL INSURANCE COMPANY

                          By:      _____

                                   John A. V. Nicoletti (JN-7174)
                                   Wall Street Plaza
                                   88 Pine Street, 7th Floor
                                   New York, New York 10005-1801
                                   (212) 220-3830
                                   (FILE NO.: 25000011 JAVN/TMR/VW)

TO:

WEG & MYERS, P.C.
Attorneys for Defendants
PGG Realty and Ben Ashkenazy
52 Duane Street, 2nd Floor
New York, New York 10007

Attention: Dennis D'Antonio, Esq.

THOMPSON HINE, LLP
Attorneys for Defendant
KeyBank National Association
127 Public Square, Suite 3900
Cleveland, Ohio 44114-1291

Attention: Harold W. Henderson, Esq.

X:\Public Word Files\25\11\LEGAL\SECOND.AMENDED DJ COMPLAINT.VAL MM.doc

21